CITY OF GRAND RAPIDS v H R TERRYBERRY COMPANY

Docket Nos. 56652, 58239. Submitted May 6, 1982, at Grand Rapids.— Decided February 8, 1983. Leave to appeal applied for.

In 1979, the City of Grand Rapids brought an eminent domain proceeding in the Kent Circuit Court to condemn certain property owned by the H. R. Terryberry Company, a partnership. Terryberry conceded the necessity of the taking but contested the issue of compensation. Plaintiff produced one expert witness to establish compensation, and, over objections by plaintiff, three partners of Terryberry were permitted to testify concerning the value of the property. Judgment was entered and defendant requested an award of attorney fees under the Uniform Condemnation Procedures Act, which was denied, Robert A. Benson, J. Plaintiff appealed the judgment and defendant appealed the denial of attorney fees claimed. The appeals were consolidated. *Held:*

1. An owner of property may testify in a condemnation case to the value of his property and explain the method used to arrive at his figure once he establishes that he is familiar with his property and with any other property that he testifies about in regard to comparable values. The court did not err in allowing the partners to testify to the value of the property.

2. Actions commenced prior to May 1, 1980, are not subject to the Uniform Condemnation Procedures Act. Therefore, the court properly denied the request for attorney fees.

Affirmed.

1. WITNESSES — LAY WITNESSES — VALUE OF LAND.

A lay witness may testify as to the value of land if he has seen the land and has some knowledge of the value of other land in the immediate vicinity.

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Expert and Opinion Evidence § 140.
[2] 27 Am Jur 2d, Eminent Domain § 425.
[3] 5 Am Jur 2d, Appeal and Error § 548.
[4] 26 Am Jur 2d, Eminent Domain § 18.

2. EMINENT DOMAIN — WITNESSES — OWNERS.

An owner of property may testify in a condemnation case to the value of his property and explain the method used to arrive at his figure once he establishes that he is familiar with his property and with any other property that he testifies about in regard to comparable values.

3. CRIMINAL LAW — PROSECUTORIAL COMMENT — PRESERVING QUESTION — APPEAL.

Appellate review of allegedly improper, but unobjected to, argument is limited to a determination of whether the statements were so extremely prejudicial that even a correction by the court would not undo the harm.

4. EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT.

Actions commenced prior to May 1, 1980, are not subject to the Uniform Condemnation Procedures Act (MCL 213.50 *et seq.;* MSA 8.265[1] *et seq.).*

*Dale W. Rhoades,* for plaintiff.

*Warner, Norcross & Judd* (by *John H. Logie* and *Richard H. Cassard),* for defendant.

Before: D. F. WALSH, P.J., and WAHLS and G. R. MCDONALD,* JJ.

G. R. MCDONALD, J. Plaintiff condemned the property of defendant H. R. Terryberry Company, a Michigan copartnership, for the Gerald R. Ford Museum, pursuant to MCL 213.361 *et seq.;* MSA 8.261(1) *et seq.* Located on the property was a two-story building in which defendant conducted its custom jewelry manufacturing business. Defendant conceded the necessity of the taking but contested the issue of compensation. Plaintiff produced one expert witness to establish compensation and, over repeated objections by plaintiff, three partners of defendant were permitted to testify concerning the value of the property.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Each partner employed a different valuation method in arriving at an opinion of the value of the condemned property. Based on a formula utilizing the cost of reproducing the building, which he had determined by obtaining quotations from building contractors and an insurance appraisal, partner George Byam concluded the value of the building was $357,750. Partner Robert Lampen's opinion valuing the property at $326,275 was based on a formula using the rental value of the building, which he determined by comparing the condemned property with another rental property he personally owned. In partner Brent Slay's opinion, based on an averaging of the sale prices of three other properties which he had concluded were comparable to the Terryberry property, the value of the property was $353,500. Slay determined the market price of these other properties based on information from local newspapers and real estate listings.

The jury returned a verdict of $250,000, which was more than $75,000 above plaintiff's expert appraiser's value. The court entered judgment on February 27, 1981. Subsequently, defendant requested attorney fees of $25,000 pursuant to MCL 213.66; MSA 8.265(16). On May 22, 1981, the trial court denied defendant's request. From the February 27, 1981, judgment, plaintiff appeals as of right. From the May 22, 1982, order denying attorney fees, defendant appeals as of right.

As the partners admittedly were not qualified as experts in the field of real estate, plaintiff argues they should have been required to testify only in a manner and to an extent as would any lay witness in a condemnation case.

Any ordinary individual who has the testamentary qualifications of knowledge of the question

about which he attempts to testify may testify as to the value of land. A lay witness will be permitted to testify as to the value of land if he has seen the land and has some knowledge of the value of other lands in the immediate vicinity. *In re Brewster Street Housing Site,* 291 Mich 313, 345; 289 NW 493 (1939).

In more general terms, the Michigan Rules of Evidence provide that a lay witness must have "personal knowledge of the matter" to which he testifies and evidence to prove personal knowledge may consist of the testimony of the witness himself, MRE 602, and any opinion or inference must be "rationally based on the perception of the witness and * * * helpful to a clear understanding of his testimony or the determination of a fact in issue". MRE 701.

Plaintiff asserts the owners' opinion testimony was inadmissible as it was not based upon their personal knowledge, but rather upon hearsay, and because the methods of valuation used by Lampen and Byam were at variance with judicially accepted methods. In admitting the partners' testimony over repeated objections by plaintiff on these grounds, the trial court ruled that "an owner by the mere fact of ownership can testify as to the value of his property in a condemnation case".

There are no Michigan cases specifically addressing the standards governing admission of an owner's testimony as to the value of condemned property. Although several jurisdictions hold that ownership alone does not qualify an individual to testify regarding the value of real estate in a condemnation case and that he must establish the minimum qualifications generally applicable to lay witness testimony,[1] the prevailing view is that

---

[1] See *Commonwealth of Kentucky, Dep't of Highways v Fister,* 373

"the owner of the land taken is generally held to be qualified to express his opinion of its value merely by virtue of his ownership. He is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibility of the land for use, to have a reasonably good idea of what it is worth. The weight of his testimony is for the jury, and it is generally understood that the opinion of the owner is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention, thus taking the place of the *ad damnum* of the writ in ordinary civil cases." 5 Nichols on Eminent Domain (rev 3d ed, 1981), § 18.4(2), pp 18-141 through 18-156.

See, also, *United States v 329.73 Acres of Land, Situated in Grenada and Yalobusah Counties, State of Mississippi,* 666 F2d 281, 284 (CA 5, 1981), and cases cited therein. (Attack on owner's valuation as not based on any accepted method of valuation precluded by established rule that opinion testimony of a landowner as to the value of his land is admissible without further qualification.)

Where an owner is per se qualified, any lack of knowledge goes only to the wieght of his testimony. *State ex rel Herman v Lopez,* 8 Ariz App 61; 442 P2d 884 (1968) (cross-examination of owner about how he arrived at valuation affects weight but not competency). *McCaffery v Northern P R Co,* 22 ND 544; 134 NW 749 (1912) (admissibility of owner's testimony does not rest on actual knowledge or on a presumption of knowledge).[2]

The rationale underlying liberal admission of the owner's opinion testimony in condemnation cases was articulated by the Circuit Court of Appeals for the District of Columbia:

SW2d 720 (Ky App, 1963); *Utah State Road Comm v Johnson,* 550 P2d 216 (Utah, 1976).

[2] Some jurisdictions have adopted qualified variations of the liberal rule, see 5 Nicholas, *supra,* pp 18-156 through 18-162, fn 29-29.2.

"The owner does not testify as just another expert, but from his unique position as the individual who stands to gain or lose the most from the tribunal's determination of the value of his property. The owner is draped with no cloak of expertise; the jury is aware of the owner's interests and free to evaluate his testimony, even to discard it altogether, in weighing the evidence. * * * [T]he right of the owner to testify is based, at least in part, on the recognition of the subjective nature of value. Opinions as to value differ, and the owner has a right to place all evidence pertaining to the value of his condemned property before the trier of fact." (Footnote omitted.) *Dist of Columbia Redevelopment Land Agency v Thirteen Parcels of Land in Squares 859, 912, 934, and 4068 in Dist of Columbia,* 175 App DC 135, 138; 534 F2d 337, 340 (1976).

Such considerations lead us to conclude that liberal admission of an owner's testimony should be permitted in condemnation cases. Traditionally, in Michigan, evidence in condemnation cases has been more liberally received than in other cases. *In re Memorial Hall Site,* 316 Mich 215, 220; 25 NW2d 174 (1946). Alleged experts have no particular monopoly on knowledge. One does not have to be an expert to testify as to the value of land. *In re Brewster Street Housing Site, supra,* p 345; *City of Detroit v Hartwick,* 204 Mich 635; 171 NW 405 (1919).

However, we believe that, before an individual may testify by virtue of his ownership of property rather than merely as an ordinary lay witness, a very basic foundation should first be laid establishing that the owner is familiar with his property and with any other property that he testifies about in regard to comparable value. Thus, for example, one who has inherited property sight unseen or who is an absentee landlord with no realistic idea of the property's condition or surroundings would

not be permitted to testify by virtue of mere legal ownership.

Once having thus qualified, an owner may testify regarding the value of his land and explain the method utilized to arrive at his figure. As in the case of expert testimony, any explanation of the method used or the source or nature of the data relied upon in arriving at such value merely goes to the weight not to the admissibility of his evidence.

The opposing party will have a full range of cross-examination to expose errors in the owner's reasoning or basis for his opinion or to discredit an unrealistic opinion before the trier of fact. Instructions to the jury as to the proper definition of market value upon which its award must be based, SJI 90.06, and as to the proper use of comparable market transactions by a witness in the formulation of an opinion, SJI 90.16, will enable the jury to properly evaluate the weight and credibility of the owner's testimony.

Applying these principles to the instant case, we find the opinion testimony of the partners who owned the condemned property to have been properly admitted. The record reveals that each partner was fully familiar with the property on which they operated their business. When testifying regarding the properties claimed to be comparable to the condemned property, Slay and Lampen had personally inspected, at least briefly, each of those buildings. Although Slay admitted he did not inspect the inside of two of the comparable properties, he was familiar with their exterior condition and the neighborhood in which they were located.

The necessary foundation having been laid, the owners were properly permitted to give their opinion as to the value of the property and to reveal

the manner in which they reached their conclusion. The weight and credibility of the testimony was for the jury.

Plaintiff also claims it was denied a fair trial when defendant's counsel, during closing argument, read to the jury excerpts from a newspaper article indicating expert appraisals were essentially worthless. This was improper, the newspaper article not having been in evidence or admissible. *Ellsworth v Massacar,* 215 Mich 511, 516-517; 184 NW 408 (1921).

However, plaintiff's counsel's failure to raise timely objection to such argument and to request a curative instruction precludes appellate review as we do not consider the statements of counsel "so extremely prejudicial that even a correction by the court would not undo the harm". *Smith v E R Squibb & Sons, Inc,* 69 Mich App 375, 386; 245 NW2d 52 (1976), *aff'd* 405 Mich 79; 273 NW2d 476 (1979).

Defendant claims that the trial court erred in refusing to award attorney fees pursuant to § 16 of the recently enacted Uniform Condemnation Procedures Act, 1980 PA 87; MCL 213.66(3); MSA 8.265(16)(3). These proceedings to acquire defendant's property were commenced in 1979, pursuant to 1966 PA 295; MCL 213.361 *et seq.;* MSA 8.261(1) *et seq.* Section 23 of 1966 PA 295 provides that an award of attorney fees may not exceed $100, MCL 213.383; MSA 8.261, while § 16 of 1980 PA 87 is more liberal.

Defendant's claim is without merit, however, as we find the Uniform Condemnation Procedures Act inapplicable to these proceedings. Section 25 of the Uniform Condemnation Procedures Act delineates which actions for acquisition of property are to be governed by that act. MCL 213.75; MSA

8.265(25). Subsection 2 provides that actions under 1966 PA 295 "may be commenced pursuant to and be governed by" the act, effective May 1, 1980. Subsection 3 provides such actions "shall be commenced pursuant to and be governed by" the act, effective April 1, 1983. Provisions of 1966 PA 295, including that governing the award of attorney fees, are repealed, effective April 1, 1983. MCL 213.76; MSA 8.265(26).

The act is silent as to its applicability to actions commenced, as was the one in the instant case, prior to May 1, 1980, pursuant to 1966 PA 295. Given the specificity of the language in MCL 213.75; MSA 8.265(25) concerning those actions to which it is applicable, we do not believe the Legislature intended that actions not "commenced pursuant" to the act be governed, in whole or in part, by provisions thereof.

Affirmed.