# STATE OF MICHIGAN

# COURT OF APPEALS

---

MARCIA MARIE MCFARLANE,

      Plaintiff-Appellee/Cross Appellant,

v

DALE DONALD MCFARLANE,

      Defendant-Appellant/Cross
      Appellee.

UNPUBLISHED
February 21, 2017

No. 329203
Livingston Circuit Court
LC No. 15-006492-DO

---

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant Dale McFarlane appeals as of right from a judgment of divorce. Defendant challenges the trial court's award of spousal support to plaintiff. Plaintiff Marcia McFarlane has filed a cross-appeal, challenging the amount and duration of spousal support awarded by the court, raising claims of evidentiary error, and challenging the trial court's valuation of the marital home and its failure to award her attorney fees. For the reasons explained in this opinion, we affirm in part and remand for further proceedings.

Plaintiff filed for divorce in February 2015, after a marriage of almost 33 years. The parties have three adult children. At the time this action was brought, defendant had been employed by Consumer's Energy Company as a gas mechanic. Plaintiff previously worked part time for the Fowlerville and Howell school districts for approximately 11 years, beginning in 1993. She also cut hair for several years after graduating from cosmetology school in 1996. From 2004 to 2009, plaintiff worked as a nurse's assistant. However, plaintiff stopped working in 2009 because of health issues, principally back problems that required two surgeries and an implant in her back. In 2012, plaintiff was approved for Social Security disability benefits.

As relevant to this appeal, the trial court awarded plaintiff $2,000 a month in spousal support, to continue until defendant reaches age 65, or until plaintiff's death, remarriage, or cohabitation, whichever occurs first. The trial court awarded defendant the marital home, which it valued at $105,000, but required defendant to pay plaintiff 50% of the equity value of the home ($37,500). The judgment provided that each party was responsible for his or her own attorney fees. Defendant now appeals as of right, and plaintiff has filed a cross-appeal.

## I. SPOUSAL SUPPORT

-1-

Both parties raise issues pertaining to the trial court's award of spousal support. In particular, both parties challenge the trial court's factual findings regarding the factors relating to the award of spousal support. In light of these factors, defendant contends that the trial court abused its discretion by awarding *any* spousal abuse to plaintiff. Alternatively, defendant contends that the amount of spousal support awarded to plaintiff was too great and that the trial court abused its discretion by not imputing income to plaintiff. Conversely, plaintiff asserts the trial court's award will leave her impoverished and that the trial court abused its discretion by awarding plaintiff an insufficient amount of spousal support that is not of a permanent duration.

"Whether to award spousal support is in the trial court's discretion, and we review the trial court's award for an abuse of discretion." *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003). A trial court's decision whether to impute income to a party in a divorce proceeding is also reviewed for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25-26; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). This Court reviews the trial court's underlying factual findings of fact for clear error. *Id*. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Gates*, 256 Mich App at 432-433. "If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Woodington*, 288 Mich App at 355. "The trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable." *Gates*, 256 Mich App at 433.

A divorce case is equitable in nature. *Loutts*, 298 Mich App at 35. The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished, and spousal support is to be based on what is just and reasonable under the circumstances of the case. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000).

> Among the factors that should be considered are: (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003).

In this case, the record discloses that the trial court considered the relevant factors and made specific factual findings. We conclude that the trial court's award of spousal support was based on appropriate considerations, that the trial court's factual findings relating to the factors were not were not clearly erroneous, and that the trial court did not abuse its discretion by refusing to award permanent spousal support. However, the record discloses that the trial court

-2-

made a clear mathematical error concerning defendant's income level after paying spousal support, which appears to have affected its determination of an appropriate award of spousal support. Accordingly, remand for reconsideration of the spousal support award is necessary.

## A. IMPUTATION OF INCOME & PLAINTIFF'S ABILITY TO WORK

We first address defendant's claim that the trial court erred by refusing to impute income to plaintiff for purposes of determining spousal support. In evaluating plaintiff's need for support, the trial court stated that it was not convinced that plaintiff was not able to work in some capacity, but it found that plaintiff's health issues and lack of marketable skills restricted her ability to obtain employment. We are satisfied that the trial court did not abuse its discretion by not imputing income to plaintiff.

Initially, we note that imputation of income often arises when a party has voluntarily or purposefully reduced income as a result of a divorce proceeding to avoid paying, or to receive, spousal support. See *Healy v Healy*, 175 Mich App 187, 191-192; 437 NW2d 355 (1989). Nothing presented indicated that plaintiff voluntarily reduced her income level in order to gain an advantage with respect to spousal support. See *id.* at 191-192. Instead, the evidence shows that she has not worked since 2009, long before the instant divorce proceedings began.

Furthermore, the record supports the trial court's findings regarding plaintiff's limited ability to work and to obtain employment. See *Myland v Myland*, 290 Mich App 691, 696-698; 804 NW2d 124 (2010). The evidence showed that plaintiff has health problems that restrict her ability to work. In 2012, she was determined to be disabled as of February 9, 2009, by the Social Security Administration, and she is receiving social security disability benefits.[1] In addition to her physical health problems, plaintiff is over age 50, has only a high school diploma, had been out of the workforce for a number of years, and has minimal marketable skills. Plaintiff also has a longstanding substance abuse problem, which the trial court categorized as a "disease." No evidence was presented to establish that there existed a specific job that plaintiff could perform. Cf. *Loutts*, 298 Mich App at 33. On these facts, it does not appear that plaintiff has an unexercised ability to earn, and defendant has not demonstrated that the trial court abused its discretion by not imputing income to plaintiff.

## B. OTHER FACTORS

As noted, the trial court considered the various relevant factors and made specific findings of fact. Although both parties challenge some of the trial court's findings, their arguments rely on specific testimony that favors their respective positions, while ignoring facts

---

[1] Defendant's reliance on a letter that plaintiff received from the Social Security office, which states that plaintiff's disability will be reevaluated every three years and that plaintiff could potentially continue to receive disability benefits if she worked, is unpersuasive. It is undisputed that plaintiff was determined to be disabled. The form letter merely informed plaintiff of applicable rules relating to her benefits. Nothing in the letter demonstrates that plaintiff has a present and unexercised ability to work.

or testimony that do not. Generally speaking, these various arguments fail to recognize the deference due the trial court's assessment of witness credibility and the weight of the evidence. See *Woodington*, 288 Mich App at 355; *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008).

In particular, with respect to defendant's specific arguments, the trial court did not err in endeavoring to determine an appropriate award based on his current income level, which included compensation for overtime. The evidence showed that defendant had regularly worked overtime for the past several years, during which time defendant's total income had risen. Moreover, the trial court found that, given the nature of defendant's job, his continued ability to work overtime was not likely to be affected by his age and there was no evidence that the amount of overtime available to defendant has decreased. Likewise, although defendant argues that the trial court's award fails to consider that he was approaching the age of retirement, we note that there is no indication that defendant has any immediate plans to retire. A spousal support award may be modified upon a petition showing new facts or changed circumstances. MCL 552.28; *Gates*, 256 Mich App at 434-435. Thus, should defendant's income level materially change due to retirement or other circumstances, he can petition the court for a modification of spousal support. Overall, the trial court was not required to speculate about the possibility of defendant's retirement, and the trial court did not clearly err by considering defendant's current income level, including his expected compensation for overtime as calculated based on his receipt of overtime in recent years.

With respect to relative need and the parties' present situations, we leave the trial court's findings undisturbed. Defendant argues that some of plaintiff's budgeted items, such as a monthly allowance for cigarettes, are unnecessary expenses. However, as discussed by the trial court, defendant's listed "mandatory" expenditures likewise include questionable costs such as $1,000 per month for food. Defendant also argues that plaintiff could use the cash payment for her portion of the equity in the marital home for her support, but ignores that he too would have additional funds for his support if he were to sell the marital home instead of retaining it and keeping his portion of the equity tied up in it. In any event, defendant's contentions that plaintiff should not receive alimony because she can support herself on savings are without merit because a party should not have to invade assets for support. See *Richards v Richards*, 310 Mich App 683, 692; 874 NW2d 704 (2015).

For her part, with respect to need and the parties' situations, plaintiff argues that the amount of spousal support fails to consider that plaintiff will likely "undergo a third back surgery and an extensive amount of dental work in the near future, both of which will likely be associated with substantial out of pocket expenses." However, plaintiff omits to mention that she has Medicare. Moreover, if plaintiff's circumstances materially change in the future, she could petition for modification of the amount of spousal support.

We also reject plaintiff's argument that the trial court erred by failing to make the spousal support award permanent, and instead continuing it until defendant reached age 65. Notably, when defendant turns 65 he is eligible to retire with full benefits and plaintiff will also be able to obtain additional income from defendant's pension without penalty. Indeed, the trial court discussed at length the temporary nature of the spousal support award as well as facts relating to defendant's pension. The trial court noted that plaintiff would be able to choose when to begin

taking her share of defendant's pension, but that she will incur a large penalty for drawing on the pension too early. The trial court also recognized that the parties' circumstances were likely to change, depending on when defendant retires and when the parties began to draw benefits. Like defendant, plaintiff is free to ask for modification of the spousal support award upon a proper showing of new facts or changed circumstances justifying modification, even after defendant turns 65. See *Richards*, 310 Mich App at 693. Balancing the various circumstances and concerns relating to defendant's pension, the trial court's decision regarding the length of the spousal support award is within the range of principled outcomes and is not clearly inequitable under the circumstances.

With respect to the parties' contributions to the joint estate, the trial court found that defendant had contributed more financially given his steady work outside the home. In contrast, the court noted that plaintiff had been employed in the past and that plaintiff had been responsible for raising the couple's children, but that plaintiff had some failings due to her substance abuse issues. These findings are supported by the evidence.

With respect to factor 1 (the past relations and conduct of the parties) and factor 12 (fault), the trial court found that these factors favored defendant due to plaintiff's long-term substance abuse problem. This finding is not against the clear weight of the evidence, and the trial court did not err by finding that fault "should not be assigned a disproportionate weight" in this case. That is, we disagree with defendant's suggestion that fault should have essentially overridden all other factors and resulted in a finding that plaintiff did not deserve any spousal support. The evidence demonstrated that plaintiff has suffered from long-term pain. Evidence was also presented that plaintiff has mental health issues, not including her substance abuse issues. Defendant's argument that plaintiff should be left to essentially fend for herself after a 33-year marriage is without merit. The record discloses that the trial court considered the issue of plaintiff's fault as a basis for awarding a lesser amount of spousal support, but without overly penalizing her. The trial court did not abuse its discretion in this regard.

In sum, the trial court's findings concerning the relevant factors for determining an award of spousal support are not clearly erroneous in light of the evidence.

## C. MATHEMATICAL ERROR

Although the trial court's factual findings concerning the various factors were not clearly erroneous, the record indicates that the trial court's equity analysis and its ultimate determination of an appropriate amount of spousal support was based on a mathematical error in its calculation of the parties' relative income levels. The trial court stated that its objective was to award spousal support in an amount that would leave defendant with a monthly net income slightly higher than plaintiff's due to plaintiff's relative fault. The court found that defendant had a net annual income of $68,000, which it divided by 12 to arrive at a net monthly income of $5,666, which it then rounded to $5,600. In comparison, the court observed that plaintiff received $643 a month in social security disability benefits. The court then determined that the spousal support award of $2,000 a month would leave defendant with a monthly income $3,000 compared to plaintiff's total income of $2,643, which the court thought was fair. The court explained:

-5-

So what I did was if he has $5,600.00 in monthly net income and I know she has $643.00 [in disability benefits], my objective was not to - - that it be completely equal because I do take into consideration the fault. So, if he pays her $2,000.00 a month then her income, if I'm doing the math right, is $2,643 and his is 28. Do I do that right? Cause 56 divided by two is $2,800, I'm missing something there. No, he would have $3,000, wouldn't he?

\* \* \*

Right. Okay, he would have $3,000 and she would have $2,643 and that seems fair to me. It's almost equal but not quite.

However, the trial court clearly erred in stating that a spousal support award of $2,000 a month would leave defendant with a monthly income of $3,000. As the trial court properly observed, defendant's monthly net income was approximately $5,600. Thus, an award of $2,000 a month in spousal support would reduce defendant's monthly net income from $5,600 to $3,600, not $3,000 as stated by the trial court. As a result, the trial court based its analysis of the equities of the award on the mistaken belief that the parties would have an income disparity of $357, when in actuality the spousal support award left the parties with an income disparity of approximately $1,000 a month in favor of defendant. Given the trial court's stated intentions, and its mathematical error in computing the effect of a $2,000 a month award on defendant's monthly income, we remand this case to the trial court for reconsideration of its spousal support award based on correct calculations of the resulting disparity in income between the parties.[2]

## II. VALUATION OF THE MARITAL HOME

In her cross-appeal, plaintiff argues that the trial court erred in valuing the marital home at $105,000. Plaintiff argues that the trial court improperly relied on testimony from defendant and a real estate agent to determine the home's value and also erred by excluding her evidence of the state equalized valuation (SEV) of the home.

We review the trial court's evidentiary decisions for an abuse of discretion. *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008); *Thompson v Thompson*, 261 Mich App 353, 355; 683 NW2d 250 (2004). "Findings of fact, such as a trial court's valuation of particular marital assets, will not be reversed unless clearly erroneous." *Woodington*, 288 Mich App at 355. "[W]here a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994).

---

[2] On appeal, plaintiff claims that the resulting disparity in income is exacerbated based on the fact that defendant will be able to claim a tax deduction on the spousal support paid to her, whereas she must pay income taxes on the support she receives. This argument fails on appeal due to the lack of evidence presented concerning defendant's tax burden. On remand, however, the trial court may consider the possible tax consequences on the parties' relative incomes to determine if those consequences result in a significant income disparity.

In this case, the home's SEV was approximately $62,030, which would suggest a market value of $124,000. See MCL 205.737(2). However, it had been some time since an assessor actually visited the property. In contrast, Scott Griffith, a real estate agent, testified that he personally visited and inspected the property. He stated that the home was only in fair condition, that it had places where the carpet was missing, that it had not been painted in a long time, that it had holes in the walls, and that the interior had evidence of cigarette smoke stains on the ceilings. He also stated that the home did not have curb appeal. Griffith testified that he would list the property at $109,900, but believed it would sell at approximately $105,000. Griffith stated that he compared the home to other homes in the area that had sold in the previous six months, making adjustments as appropriate, to arrive at his valuation. In addition to Griffith's testimony, defendant testified about the condition of the home and he opined that the he thought the home would be worth slightly less than the figure offered by Griffith. Based on this evidence, the trial court valued the home at $105,000.

On appeal, we conclude that the trial court's evidentiary decisions relating to the home's value were not an abuse of discretion, and the trial court's valuation of the home was not clearly erroneous. First, the trial court did not err in relying on the testimony of realtor Scott Griffith to determine the value of the marital home. Contrary to plaintiff's arguments, it was not necessary for Griffith to be qualified as an expert in order to testify about the home's value. See *Grand Rapids v H R Terryberry Co*, 122 Mich App 750, 752-753; 333 NW2d 123 (1983) ("A lay witness will be permitted to testify as to the value of land if he has seen the land and has some knowledge of the value of other lands in the immediate vicinity."). See also *Lee v Lee*, 191 Mich App 73, 76; 477 NW2d 429 (1991) (finding that expert testimony was not required for trial court's valuation of a home). In addition, Griffith's testimony was not improper simply because he was appointed by the trial court. See MRE 614(a). Given Griffith's testimony, the trial court did not abuse its discretion in finding that Griffith provided competent evidence of the home's value. Griffith had both personal knowledge of the condition of the home and knowledge of the value of other homes in the area.

Second, plaintiff's objection to defendant's testimony concerning the home's value is without merit. Plaintiff complains that defendant did not have knowledge of the value of other properties in the area, but it is well-settled that the owner of property may testify about its value "merely by virtue of his ownership" and that any lack of knowledge affects only the weight of his testimony, not its admissibility. *H R Terryberry Co*, 122 Mich App at 754 (quotation omitted). See also *Lee*, 191 Mich App at 76 (concluding that parties who had lived in the home for nearly 20 years could testify concerning their understanding of their home's value). Thus, the trial court did not abuse its discretion by allowing defendant to offer testimony on the home's value.

Third, the record does not support plaintiff's argument that the trial court excluded her evidence of the SEV for the property. On the contrary, the trial court *did* allow plaintiff to offer this evidence as an exhibit, but the court found that the SEV was not a reliable indicator of the home's value, especially considering Griffith's testimony concerning the condition of the home. There is no single method required for valuing property, *Neville v Neville*, 295 Mich App 460, 472; 812 NW2d 816 (2012); and plaintiff's assertion that the trial court was required to adopt a value of the home based on the SEV is without merit.

Overall, the trial court did not abuse its discretion in admitting the contested evidence relating to the home's value. In light of the evidence presented, the trial court's valuation of the home was within the range of proofs, and the trial court's factual determination of the home's value was not clearly erroneous. See *Jansen*, 205 Mich App at 171.

## III. ATTORNEY FEES

Plaintiff next argues that the trial court erred by failing to order defendant to pay her attorney fees. According to plaintiff, she lacks the ability to pay these fees because, to make payment, she will have to invade her assets while, in contrast, defendant would be able to pay these expenses in light of his superior monthly income.

"A court in a divorce action may award attorney fees to enable a party to carry on or defend the action." *Woodington*, 288 Mich App at 369. "The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Id.* at 370.

> The party seeking attorney fees must allege facts sufficient to show either that the party is unable to bear the expense of the action, and that the other party is able to pay, MCR 3.206(C)(2)(a), or that the attorney fees were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, MCR 3.206(C)(2)(b). [*Woodington*, 288 Mich App at 370.]

On appeal, a trial court's decision on an award of attorney fees in a divorce action is reviewed for an abuse of discretion. *Richards*, 310 Mich App at 699. We review the trial court's underlying factual findings for clear error. *Id.* at 700.

In this case, the record discloses that, at a pretrial hearing, the trial court ordered that plaintiff could draw $2,500 from the parties' joint bank account for a retainer for her attorney. At trial, plaintiff indicated that she had withdrawn this amount from the bank. Aside from seeking payment of this retainer, plaintiff did not pursue additional attorney fees. No request for attorney fees was made at trial. In particular, although the parties discussed an initial fee invoice before trial, plaintiff's counsel did not seek to have this invoice admitted because the attorney fees would not be fully known until after trial. Yet, at trial, plaintiff never sought to introduce an updated fee invoice, and plaintiff's counsel did not request that defendant be ordered to pay plaintiff's additional attorney fees. Having failed to make a request for additional attorney fees and having failed to present the trial court with evidence of her outstanding liability for attorney fees as well as her inability to pay these fees, plaintiff cannot now show that the trial court abused its discretion by concluding that each party should be responsible for their own attorney fees. See MCR 3.206(C).

We recognize that, in ordering both parties to pay their own attorney fees, the court noted that plaintiff would have money from the sale of the home to pay her fees. Plaintiff correctly asserts that "[i]t is well settled that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Gates*, 256 Mich App at 438. However, we do not read the trial court's statement concerning plaintiff's ability to use proceeds from her share of the equity in the marital home to pay her attorney fees as an indication that the court expected her to invade assets necessary for her support to pay her

attorney fees. That is, plaintiff has not shown that her spousal support and disability benefits are insufficient for her support, meaning that she has not shown her assets are necessary for her support and thus, even if she uses her assets to pay her attorney fees, she has not shown that she will be required to invade assets needed for her support to pay her attorney fees. See *id.* In sum, it was plaintiff's burden to show facts sufficient to justify an award of attorney fees, *Woodington*, 288 Mich App at 369, but plaintiff has not met the requirements of MCR 3.206(C)(2).[3]

## IV. OTHER EVIDENTIARY ISSUES

Next, plaintiff argues that the trial court abused its discretion by admitting into evidence photographs depicting plaintiff playing with her grandchildren. According to plaintiff, the trial court should have excluded these photographs as a sanction for defendant's failure to produce them in keeping with the trial court's discovery orders. However, even if the trial court erred in admitting this evidence, the error does not warrant appellate relief. Apart from the photos, plaintiff's daughter, Melony Culbertson, testified that she had seen plaintiff pick up her grandchildren and that plaintiff did not seem to have a problem doing so. Another daughter, Amandra Banda, testified that plaintiff could lift Amandra's children. Moreover, in commenting on the extent of plaintiff's alleged disabilities, the trial court relied on its own observation of plaintiff in court, explaining that it observed plaintiff bend under a plastic security chain that was three or four feet high without any difficulty. Given this other evidence, any error in the admission of the photos was harmless. MCR 2.613(A); *Morales*, 279 Mich App at 729.

Finally, the trial court did not abuse its discretion by prohibiting the introduction of plaintiff's medical records on rebuttal. Plaintiff's complaint sought spousal support on the basis that she was unemployed due to physical disability. Plaintiff also testified regarding her disabilities in her case-in-chief. Thus, plaintiff should have presented any medical records in support of her testimony during her case-in-chief. The trial court did not abuse its discretion by excluding this evidence as untimely. *Winiemko v Valenti*, 203 Mich App 411, 418-419; 513 NW2d 181 (1994).

---

[3] Plaintiff argues that we should remand this case for a determination of whether her appellate attorney fees and costs should be paid by defendant. Because "the trial court is in a better position to determine the reasonableness and necessity of such an award," *Wiley v Wiley*, 214 Mich App 614, 616; 543 NW2d 64 (1995), plaintiff may raise the issue of appellate attorney fees in an appropriate motion on remand.

Affirmed in part and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.


/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan