*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA AYERS, Personal Representative of the
ESTATE OF TERRY NOVAK,

      Plaintiff-Appellee,

v

NICHOLAS TOTH and FSS TECHNOLOGIES
LLC,

      Defendants-Appellants.

UNPUBLISHED
May 21, 2026
10:50 AM

No. 371716
Wayne Circuit Court
LC No. 22-001968-NI

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

RIORDAN, P.J. (*dissenting*).

Defendants are entitled to a new trial because of plaintiff's counsel's numerous, intentional fuelings of the jury's passions with irrelevant, improper, and highly inflammatory statements.

At the outset, I note that defendants did not object to any of plaintiff's counsel's statements during closing argument. But this is not a bar to this Court's review of the issues and conduct raised, nor is it a bar to defendants obtaining relief. As our Supreme Court has stated:

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; *if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action.* [*Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982) (emphasis added and footnotes omitted).]

First, plaintiff's counsel's references to defendant Nicholas Toth leaving the scene of the accident before police arrived was a major theme of his closing argument. I do not question that Toth leaving the scene of the accident was a relevant and a proper subject to address. However, because Toth's leaving the scene only was relevant to show that he perhaps realized he had done something wrong, i.e., he had a guilty conscience, it was only pertinent for establishing liability. See *Johnson v Austin*, 406 Mich 420, 441-442; 280 NW2d 9 (1979). It was not relevant for the purpose of determining compensatory damages, which was the only issue left for the jury to decide at the time plaintiff's counsel extensively brought up the issue during his closing. After defendants had earlier conceded liability, the fact that Toth eventually left the scene of the accident had no relevance in determining the amount of compensatory damages Terry Novak suffered. Despite its irrelevancy, plaintiff's counsel put forth considerable effort, and went to great, impassioned and improper lengths to hammer home a fact, no longer in controversy, that after first stopping following the accident, Toth eventually left the scene. During his closing argument, plaintiff's counsel stated:

And when the driver hit and ran and took off, hiding from the police, not my words, Officer Sandoval's words, fleeing from the police, hit and run, police, Officer Sandoval, Luis Sandoval, they knew what they did.

No "I'm sorry." No "how is he?["] No "Can we visit? Can we send him flowers? Can we help? Can we do anything?" And you know what they did, they all, not just Toth, hid from that day till you all sat in those chairs. They eluded justice for that man right there is what they've been doing, and they got caught in this room because you all said, yes, I'll serve.

* * *

 . . . [W]hat really happened here? Something bad, y'all. You're not here to decide a crime, you all heard evidence. It was a crime. And it wasn't a small crime, it was a felony crime, and he got off.

Normally, we don't get to talk about that. That came into evidence. He was charged. He, Toth, was charged for this crash. You all heard evidence. He then pled guilty to a lesser charge for this crash. That's negligence. Oh my God. It's actually worse than negligence, but let's move on.

Fled. Hid.

* * *

 . . . But [Toth] didn't care. He was hiding, he was fleeing, he was out. And he got -- almost got away with it until nine days ago today when you all came in. The only shot at justice that Terry Novak will ever have.

With defendants' liability already determined, the only conceivable purpose for blatantly bringing Toth's "fleeing" to the jurors' attention over and over was to give them a further reason to award a greater amount of damages. In other words, plaintiff's counsel's goal was to explicitly tug and pull on juror emotion to give them a justification to award greater damages as a punishment

-2-

for Toth's actions. However, as plaintiff's counsel was well aware, again, only compensatory damages were at issue at the time he made his closing argument, and the law did not allow for the imposition of the punitive sanctions as counsel was goading the jury to award. *Rafferty v Markovitz*, 461 Mich 265, 270-271; 602 NW2d 367 (1999). "Because the purpose of compensatory damages is to make an injured party whole for losses actually suffered, the amount of recovery for such damages is thus limited by the amount of the loss." *Id*. at 271. Again, Toth's behavior—even if it could be cast as morally, ethically, or legally wrong, had absolutely no bearing on the amount of compensatory damages Novak suffered and should not have been the subject of plaintiff's counsel's closing argument.[1]

Next, plaintiff's counsel inappropriately attacked the appellants for exercising their constitutional right to defend themselves in court. During closing argument, plaintiff's counsel stated that when he was a kid, he played sports and coaches consistently preached it was proper to

> [t]ake responsibility. Some call it personal responsibility; take accountability for what you do, do the right thing, and when you make a mistake, if it's a mistake, or for some folks, if it -- intentional, step up, accept responsibility, apologize, and mean it, and then show that you're sorry and be held accountable for everything. That's all that [Novak] has been trying to do under the law for two years.
>
> * * *
>
> They're the ones that are going to sit here and try to convince you, the same people that sat here in their opening statement, and I don't call lawyers out, and these are wonderful people, I respect them, but I hope they stand up and say, boy, did we screw up. We should have admitted [responsibility or liability] from day one, we're sorry.
>
> Because if I don't hear that, another slap on [Novak's] face.

Despite counsel's request that defendants say "sorry" during its closing before the jury, defendants did not broach the issue of an apology. In rebuttal to defendants' closing and lack of an apology "from day one," apparently miffed and, again, to stir the emotions and inflame the passions of the jury, plaintiff's counsel argued:

> Not a single apology. Not a single admission that he got up here and told you to your faces he was going to prove that there was no negligence. He did not stipulate the permanent, serious disfigurement or the -- or the serious impairment of a body function until today.
>
> So what you're getting, you're getting the hiding and the fleeing and the hit and run all over again. And the only way it's going to stop is when you all go to

---

[1] Further, as M Crim JI 4.4 elucidates, evidence of flight does not necessarily prove guilt. "A person may run or hide for innocent reasons, such as panic, mistake, or fear." *Id*.

the deliberation room, speak your mind, speak your votes. And when six out of eight of you agree, that will put an end to it finally.

Plaintiff's counsel's "apology" commentary and plea not only was problematic, but it was also improper. Again, counsel brought forth an inflammatory issue to the jury that was outside the scope of compensatory damages. Counsel again was fishing for, and encouraging, an award of punitive damages. At this point, as previously stated, liability had been established by stipulation, and plaintiff's counsel's "apology" detour was totally unrelated to the only question before the jury. That question being, what was the amount of damages Novak was entitled to receive to compensate him for his injuries? The seeking of an apology based upon defendants' liability and actions after the accident up to, and including, defendants' closing, had absolutely no bearing on the answer to that question. Once again, the only conceivable purpose for plaintiff's counsel's actions was to further stoke the jury's emotions.

Also during rebuttal, plaintiff's counsel's stated that "the only way it's going to stop is when you all go to the deliberation room" and agree on damages. The "it" referenced by counsel is found in the preceding sentence of his rebuttal, where he mentions the "hiding and fleeing and the hit and run all over again." Here, plaintiff's counsel is making yet another appeal to the jury to send a message to the world regarding perceived failures as they may relate to potential liability at the time of the accident, an issue that was not before the jury. See *Joba Constr Co, Inc v Burns & Roe Inc*, 121 Mich App 615, 637; 329 NW2d 760 (1982) (explaining that attorneys are not to appeal to the jurors to look beyond the facts of the case and use their verdict to serve the broader public good).[2]

Further, plaintiff's counsel commented upon the subsequent remedial measures which FSS Technologies, LLC, implemented after the accident. During his opening statement, he cited defendants' opening statement where various FSS policies were mentioned:

> I think you're gonna find really interesting about no tolerance of alcohol and drugs. Never being on a cell phone while driving or any electronic thing. Having to report the accident to your employer, even though we have to under the law anyway. You're gonna hear all sorts of things that went on inside this corporation after [the] fact, all of which when you read it you'll see are grounds for

---

[2] Although not relied upon by defendants in their argument on appeal, plaintiff's counsel in closing argument, while requesting an award in favor of Novak, also said, "Giving money to [Novak], just like sending someone to jail[,] is not going to bring it all back and doesn't make it go away. It is a symbol to [Novak], but it's not just [Novak], it's everyone, us as a society. Okay? But it's to [Novak], you matter, [Novak], because he doesn't feel like he matters yet to FSS and Toth, and I don't blame him for feeling that way because I think their actions speak a lot louder than their words." This is a further example of plaintiff's counsel injecting other, improper issues into his summation at the close of trial. The mention of how a verdict is a symbol to "society" clearly implicates an appeal to the jury's sense of civic duty or to the broader public good. Further, the assertion that Toth and FSS do not care about Novak had the only effect to potentially inflame the jury's passions about defendants' attitudes, which, no doubt, plaintiff's counsel hoped would lead to a larger award principally based on a desire to punish defendants rather than compensate Novak.

termination, but yet he's still sitting right there. And you're gonna see and hear in this case that the real reason why he's sitting right there is because of this trial.

It is not clear how any changes FSS made to its policies after this accident were proper considerations for the jury. As a well-established principle of evidentiary and common law, a party's subsequent remedial measures are "not admissible to prove negligence or culpable conduct in connection with the event." MRE 407; *Downie v Kent Prods, Inc*, 420 Mich 197, 208; 362 NW2d 605 (1984).

Finally, plaintiff's counsel used the highly misleading, but in this case seemingly effective, tactic of "anchoring damages" to the entirely irrelevant incomes of highly paid professional athletes. As described by Justice MARKMAN, an "anchoring effect"

> "occurs when people consider a particular value for an unknown quantity before estimating that quantity." [Professor Daniel Kahneman] asserts that the anchoring effect influences decisions even if the "particular value" considered has nothing to do with the quantity to be estimated. In the context of a jury trial, the anchoring effect suggests that the jury's final award may sometimes be unduly affected by a large initial presentation of damages. Accordingly, a jury may rely on a plaintiff's initial "anchoring value" to set the award's range and then reach a final award by "discounting." [*Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 244; 884 NW2d 238 (2016) (MARKMAN, J., *concurring*) (citations omitted).]

During closing, plaintiff's counsel said, "When you talk about money, we got to talk about, what do we have in the world that can give us some frame of reference in context to money and a lot of money?" Counsel then recited the annual salaries from notable local sports figures, including Detroit Lions quarterback Matthew Stafford, who earned salaries of $31 million and $41 million in different years, and Detroit Tigers player Miguel Cabrera, who earned a salary of $32 million in one year.[3]

Without question, assessing noneconomic damages is an imprecise task. *Freed v Salas*, 286 Mich App 300, 334; 780 NW2d 844 (2009). Nevertheless, the determination of those noneconomic damages must be based on the evidence presented at trial. See *Shaw v City of Ecorse*, 283 Mich App 1, 17; 770 NW2d 31 (2009) (noting that a jury award must be supported by the evidence). Here, plaintiff's counsel encouraged the jury to base its award on noneconomic damages, in part, on the annual salaries of highly skilled professional athletes. At the outset, the referenced salaries were not in evidence, making the argument improper. See *Grand Rapids v HR Terryberry Co*, 122 Mich App 750, 757; 333 NW2d 123 (1983).[4] Further, there should be no

---

[3] Plaintiff's counsel made other anchoring references, including the $30 million annual salary of Mary Barra as the CEO of General Motors, the $200 million price of a certain Picasso painting, as well as references to "higher examples," including billionaires Bill Gates and Jeff Bezos.

[4] While denying defendants' motion for a new trial, the trial court relied on the fact that attorneys are allowed "to allude to reasonable inferences drawn from the evidence without the strict confines of the rules of evidence." While this is true, the trial court failed to acknowledge that the arguments

question that the amount a star athlete makes in a year has absolutely no bearing on how much money is needed to properly compensate Novak for the pain and suffering he endured or would endure in the future. See, e.g., *Gregory v Chohan*, 670 SW3d 546, 557-558 (Tex, 2023) (rejection of the "unsubstantiated anchoring" of damages "by reference to objects or values with no rational connection to the facts of the case").[5] Accordingly, such anchoring is not a proper argument for the jury and, again, was brought up solely for the purposes of fanning the flames of the jury's passions.

Based on all of these instances of highly improper conduct, a court is left with the task of deciding "whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial." *Reetz*, 416 Mich at 103. Given the sheer quantity and forcefulness of plaintiff's counsel's inappropriate arguments, I must conclude that the arguments played a role in the jury's damages determination. Notably, plaintiff's counsel's conduct did not consist merely of a solitary, or even relatively rare, improper reference. Rather, he improperly argued to the jury regarding (1) Toth's post-accident conduct, when liability was no longer at issue; (2) defendants' refusal to admit liability through an apology prior to litigation, during litigation, and in its closing; and (3) anchoring of damages to wholly unrelated sports celebrities and Fortune 100 business executives. None of these were relevant or pertinent to the jury's evaluation of compensatory damages that may be due to Novak. I agree with the concurrence that each argument, by itself, standing alone in isolation, may not have been sufficient to taint the jury. But here, taken in combination, as the concurrence does not consider, I am left with no doubt that plaintiff's counsel reached his implicit goal, through his multiplicity of explicit, specific efforts, to taint the jury's deliberations relating to compensatory damages.

Although the trial court instructed the jury that it was to make its decision solely on the basis of evidence, that comments and argument from counsel were not evidence,[6] and that the amount awarded is not to punish defendants, because the amount of plaintiff's counsel's improper references "were so numerous," I find that "it is doubtful that any instruction would have been effective." *Reetz*, 416 Mich at 106.[7]

---

proffered were wholly irrelevant to the limited task before the jury (compensatory damages), and the arguments' only utility would have been to inflame the jury's passions.

[5] While the anchoring in *Gregory* did not involve the salaries of highly paid professional athletes, it did include the irrelevant references to a $71 million F-18 fighter jet and a $186 million painting. *Gregory*, 670 SW3d at 557-558. Caselaw from sister states is not binding but may be relied on for its persuasive value. *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

[6] Significantly, the instruction that counsels' statements are not evidence was only provided in the preliminary instructions and not the final instructions to the jury before it retired to deliberate.

[7] On appeal, defendants also argued that plaintiff's counsel made Toth's purported drinking a major theme of trial. The trial court record belies this contention. While the possibility of Toth having been impaired at the time of the accident was mentioned in testimony during the trial,

Consequently, this matter should be remanded to the trial court for a new trial, and I respectfully dissent.

/s/ Michael J. Riordan

---

plaintiff's counsel did not conclusively state that Toth was in fact intoxicated. Thus, Toth's alleged drunkenness was not a "major theme" of trial.