# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 19, 2008

134328

KENNETH SCIOTTI,
        Plaintiff-Appellee,

v

36th DISTRICT COURT,
        Defendant-Appellant,
and

CITY OF DETROIT,
        Defendant.
_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 134328
COA: 266160; 267887
Wayne CC: 03-327602-CD

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of April 30, 2008. The application for leave to appeal the May 22, 2007 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

      KELLY, J. (*concurring*).

      I concur in the Court's order denying defendant's application for leave to appeal. I write separately, however, to respond to Justice Markman's somewhat conclusory assertions, which omit material facts that otherwise demonstrate that plaintiff has sustained his burden of proof in this case.

## I. Factual Background and Procedural History

      Plaintiff, a Caucasian male, began working for defendant 36th District Court in 1979 as a file clerk. He received two automatic promotions in 1983, and in the same year, received a bachelor's degree in management from Wayne State University. Defendant offered plaintiff another promotion in 1986, but plaintiff declined because it involved a pay reduction. Plaintiff alleged that from that time forward, he regularly applied for promotions but failed to receive one. In 1993, he filed a discrimination suit against defendant and was thereafter offered a promotion. According to plaintiff, since 1995, he has applied for eight supervisory positions: probation supervisor in March 1998,

March 1999, and March 2002; central records supervisor in June 2002; three court services supervisor positions in 2002; and a position in jury services in July 2003. He was denied each position, leading to the instant reverse race discrimination suit filed under the Civil Rights Act[1] (CRA).

At trial, plaintiff alleged that all the individuals promoted ahead of him were African-Americans. Specifically, he presented evidence that since 1999, all 18 individuals promoted to open positions were African-American and that, in 24 years, there was only one white supervisor of the probation department. Additionally, he presented evidence that 13 of 14 supervisors in the civil/real estate division were African-Americans and that all 14 supervisors in the criminal/traffic department were African-Americans.

Plaintiff's claims were tried before a jury. At the close of plaintiff's proofs, defendant moved for a directed verdict, and the trial judge took the motion under advisement. While a ruling on the motion remained pending, the jury found in favor of plaintiff, determining that race was one of the motives or reasons that made a difference in the determination to not promote plaintiff or that defendant had retaliated against plaintiff. The jury awarded plaintiff $424,000, and the trial court subsequently granted plaintiff's motion for attorney fees. The trial judge denied defendant's motion for a directed verdict or judgment notwithstanding the verdict (JNOV).

Defendant appealed, challenging the substantive rulings on liability and the fee award. In an unpublished opinion per curiam, the Court of Appeals affirmed defendant's liability under the CRA, but reversed on the retaliatory discharge claim, holding that plaintiff failed to produce sufficient evidence to sustain the claim.

We initially granted leave to determine whether plaintiff produced sufficient evidence in support of his discrimination claims.

II. Analysis

A. Legal Background

The CRA provides, in pertinent part:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment,

---

[1] MCL 37.2201 *et seq.*

> compensation, or a term, condition or privilege of employment, because of religion, *race*, color, national origin, age, sex, height, weight, or marital status.[2]

Thus, the CRA clearly prohibits employers from discriminating on the basis of race.

In *Hazle v Ford Motor Co*,[3] this Court examined the law relative to establishing a prima facie case of discrimination under the CRA. The Court noted that, in some discrimination cases, a plaintiff is able to produce direct evidence of racial bias. In those cases, a plaintiff can prove unlawful discrimination in the same manner as a plaintiff would prove any other case.[4] In many cases, however, the Court recognized that there is no direct evidence of impermissible bias. In such cases, in order to survive a motion for summary disposition, a plaintiff must proceed through the burden-shifting framework expounded in *McDonnell Douglas Corp v Green*.[5]

Under *McDonnell Douglas*, a plaintiff must first offer a prima facie case of discrimination. Thus, a plaintiff is required to present evidence that (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination.[6] If a plaintiff establishes a prima facie case of unlawful discrimination through circumstantial evidence, the burden then shifts to the defendant-employer to articulate a legitimate nondiscriminatory justification for its employment decision.[7] In order to survive a motion for summary disposition or a directed verdict, a plaintiff need only create a question of material fact upon which reasonable minds could differ regarding whether discrimination was a motivating factor in the employer's decision.[8]

Therefore, with respect to the *McDonnell Douglas* factors, plaintiff was required to show first that he belongs to a protected class. Defendant did not contest this showing.

---

[2] MCL 37.2202(1)(a) (emphasis added).

[3] *Hazle v Ford Motor Co*, 464 Mich 456 (2001).

[4] *Id*. at 462.

[5] *Id*., citing *McDonnell Douglas Corp v Green*, 411 US 792 (1973).

[6] *McDonnell Douglas, supra* at 802.

[7] *Id*.

[8] *Hazle*, *supra* at 466.

Second, plaintiff must show that he suffered an adverse employment action. Again, defendant did not contest that the decision not to promote plaintiff constitutes an adverse employment action. Third, plaintiff must show that he was qualified for the positions in question. Fourth, he must show that the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. Consequently, the third and fourth elements of a prima facie case of discrimination are the subject of this appeal.

## B.  Application

On the basis of the aforementioned framework for analyzing discrimination claims, I believe that plaintiff has presented sufficient evidence for a reasonable jury to conclude that it is more likely than not that defendant's failure to promote plaintiff included an element of racial discrimination.

### 1.  1998/1999 Probation Supervisor Position

Plaintiff concedes that he cannot establish a prima facie case of discrimination for these positions.

### 2.  May 2002 Probation Supervisor Position

Plaintiff alleged that he was qualified for this position because he had the requisite bachelor's degree. He also had the required two to five years of experience working as a probation officer. Plaintiff further alleged that he received higher scores in his interview than the chosen candidate. Plaintiff also offered evidence that the chosen candidate was selected before the interview process began.

### 3.  June 2002 Central Records Supervisor Position

Plaintiff alleged that he was qualified for this position because he had the requisite bachelor's degree. He had also worked with court records throughout his lengthy tenure with defendant. Defendant even granted plaintiff an interview for the position, indicating that defendant believed plaintiff met the minimum qualifications for the position. Plaintiff further alleged that the chosen candidate received dismal performance reviews and that he failed to properly answer questions on a computer as a required part of the interview process, yet he was hired nonetheless.

### 4.  2002 Clerical Services II Position

Plaintiff alleged, and defendant does not contest, that plaintiff met the education and work experience requirements for the position. Defendant contends that plaintiff was unqualified because he was not a member of the Government Administrators Association

(GAA). However, the chosen candidate, the only GAA member who applied, was also unqualified because she did not meet the education requirement at the time of the hiring. Accordingly, plaintiff alleged that the position should have been opened to non-GAA members, including plaintiff, as was customary when GAA members do not apply for a position.

### 5. 2002 Court Services II Positions

Plaintiff alleged that he met the educational and work experience requirements for the positions and was therefore qualified. The candidate chosen for one of the positions did not work for defendant before being hired and therefore did not meet the requirement that the applicant have five to eight years of experience in court room operations. She also lacked seniority with the court. The candidate chosen for the second position also lacked the minimum work experience within the court and was thus unqualified, but was selected nonetheless.

### 6. 2003 Jury Services Supervisor

Plaintiff concedes that he cannot establish a prima facie case of discrimination for this position.

But for the probation supervisor and jury services supervisor positions, plaintiff alleged that he was qualified for the relevant positions and that the jobs were given to other candidates under circumstances in which a reasonable juror could find gave rise to an inference of discrimination. Thus, the burden shifted to defendant to articulate a legitimate nondiscriminatory reason for its hiring decisions. Defendant did so in an attempt to rebut each of plaintiff's claims. Accordingly, the jury was left with a question of material fact on which reasonable minds could differ regarding whether discrimination was a motivating factor in defendant's decisions.

Having established a prima facie case, the question therefore becomes whether the trial court should have granted a directed verdict or JNOV to defendant. Directed verdicts and JNOVs are granted only in limited circumstances.[9] This Court reviews motions for a directed verdict or JNOV by drawing all legitimate factual inferences in the light most favorable to the nonmoving party.[10] Such motions may be granted on some or all of the issues presented if a verdict is against the great weight of the evidence.[11] A

---

[9] See MCR 2.611(A).

[10] *Wilkinson v Lee*, 466 Mich 388, 391 (2000).

[11] MCR 2.611(A)(1)(e).

verdict is against the great weight of the evidence if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.[12] If the evidence conflicts, the issue of credibility ordinarily should be left with the trier of fact.[13]

Here, viewing the evidence in a light most favorable to plaintiff and granting every reasonable inference to plaintiff, defendant has failed to establish a right to relief. As alleged, plaintiff set forth a prima facie case, which defendant then rebutted with claims that its hiring decisions were nondiscriminatory. This created a question of fact on which reasonable minds could differ. The jury rendered a verdict for plaintiff, and I believe the verdict must stand. A verdict should not be overturned if there is *an* interpretation of the evidence that provides a logical explanation for the jury's findings.[14] I believe that the evidence can be interpreted so as to uphold the jury's findings.[15]

---

[12] *People v Musser*, 259 Mich App 215, 218-219 (2003).

[13] *People v Lemmon*, 456 Mich 625, 642-643 (1998).

[14] *Granger v Fruehauf Corp*, 429 Mich 1, 7 (1987).

[15] In his dissenting statement, Justice Markman sets forth defendant's arguments about why its hiring decisions were nondiscriminatory. However, Justice Markman ignores the fact that these arguments, used to rebut plaintiff's prima facie claim that defendant's reasons were a pretext for discrimination, merely created a question of fact on which reasonable minds could differ. Because the jury, not Justice Markman, was the trier of fact in this case, I believe that the jury's verdict must stand. Indeed, the facts disfavoring plaintiff's discrimination claims, which Justice Markman references, merely support my position that reasonable minds could differ in interpreting the evidence presented at trial. Justice Markman is free to credit the testimony of whomever he wishes. However, his role as an appellate judge precludes him from substituting his interpretation of the evidence for that of the jury.

Justice Markman also asserts that the Court of Appeals erred in relying on plaintiff's "statistical" evidence. This assertion is somewhat tangential to the dispositive subject of this appeal—whether plaintiff set forth a prima facie case of discrimination. Nonetheless, plaintiff did not rely solely on "statistical" evidence in support of his claim. Rather, plaintiff introduced testimony of a coworker that defendant made hiring decisions without considering all applicants, offered evidence that he was treated poorly by defendant's human resources department, and evidence that he was more qualified than chosen candidates and was denied promotions despite these qualifications. Justice Markman dismisses this evidence as "wholly irrelevant." While he may question the credibility of the evidence, the jury apparently did not. It is worth repeating that this Court's mere disagreement with the factual findings of the jury is not grounds for

### III.     Conclusion

I concur in the Court's decision to deny defendant's application for leave to appeal.  Plaintiff established a prima facie case of discrimination and defendant, although offering nondiscriminatory reasons for its hiring decisions, failed to persuade the jury that it did not discriminate against plaintiff.  Accordingly, defendant is not entitled to relief, and the jury's verdict must stand.

YOUNG, J.  (*concurring*).

I concur in the Court's decision to deny the application for leave to appeal because the defendant is not entitled to the relief it seeks.  The trial court did not abuse its discretion by admitting the lay opinion testimony of the defendant's former human resources administrator, and the defendant did not request any limiting instruction concerning her testimony.  The defendant also acquiesced in the jury's consideration of the plaintiff's "statistical evidence."[16]  Although the defendant may have had a legal basis for excluding the "statistical evidence" as incompetent to establish an inference of racial discrimination,[17] such evidence was properly before the jury in the absence of an objection by the defendant.  Finally, in agreeing on a general verdict, the defendant waived any right to have the jury individually assess each contested promotional decision.  Therefore, the jury did not need to specify which of the defendant's promotional decisions violated the ban on racial discrimination in MCL 37.2202(1)(a).

Given the evidence properly before it, a reasonable jury could have found that at least one of the defendant's adverse promotional decisions violated the ban on racial discrimination in MCL 37.2202(1)(a).  Accordingly, I concur in this Court's decision to

---

granting a motion for a directed verdict or JNOV.  And, even if the statistical evidence were insufficient standing alone, plaintiff introduced sufficient other evidence of discrimination from which a reasonable mind could infer an element of discrimination.

[16] The plaintiff submitted evidence indicating that 13 of the 14 supervisory positions in the civil and real estate divisions were held by African-Americans, that all 14 supervisory positions in the criminal and traffic divisions were held by African-Americans, and that all 18 supervisory positions filled since 1999 were filled with African-Americans.

[17] The data that the plaintiff introduced fails to indicate the racial makeup of the applicant pool for individual supervisor positions that the defendant filled.  Absent that point of comparison, the data itself has little probative value in determining whether the defendant discriminated against the plaintiff on account of his race.  See *Pippin v Burlington Resources Oil & Gas Co*, 440 F3d 1186, 1197-1198 (CA 10, 2006).

deny the application for leave to appeal. The courts below correctly denied the defendant's motion for a judgment notwithstanding the verdict.

TAYLOR, C.J., and CORRIGAN, J., join the statement of YOUNG, J.

MARKMAN, J. (*dissenting*).

In this "reverse discrimination" case, the jury awarded plaintiff $424,000. The trial court denied defendant's motion for a judgment notwithstanding the verdict (JNOV), and the Court of Appeals affirmed. This Court then granted leave to appeal.

In *Lind v Battle Creek,* 470 Mich 230 (2004), we held that a reverse discrimination plaintiff must satisfy the same standards required of other discrimination plaintiffs. In *Hazle v Ford Motor Co,* 464 Mich 456, 462 (2001), we held that if there is no direct evidence of discrimination, the plaintiff may "'present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination.'" (Citation omitted; emphasis in the original.) In order to establish a prima facie case of discrimination, the plaintiff must present evidence that:

> (1) [he or] she belongs to a protected class, (2) [he or] she suffered an adverse employment action, (3) [he or] she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. [*Id.* at 463.]

"[O]nce a plaintiff establishes a prima facie case of discrimination, . . . the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason." *Id.* at 464. "If the employer makes such an articulation, the presumption created by the . . . prima facie case drops away." *Id.* at 465. "At that point, . . . the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" *Id.* (citation omitted). In other words, the plaintiff must demonstrate that the employer's nondiscriminatory reason was a "'pretext for [unlawful] discrimination.'" *Id.* at 466 (citation omitted).

In the instant case, plaintiff has failed, in my judgment, to establish a prima facie case of discrimination. Even assuming that the first three elements of *Hazle* are satisfied, plaintiff has presented absolutely no evidence to establish that the positions were given to other persons "under circumstances giving rise to an inference of unlawful discrimination." *Id.* at 463. Even assuming that plaintiff had established a prima facie case of discrimination, defendant has produced "evidence that its employment actions were taken for a legitimate, nondiscriminatory reason." *Id.* at 464. In response, the

plaintiff has failed to demonstrate that defendant's nondiscriminatory reasons were a mere "'pretext for [unlawful] discrimination.'" *Id.* at 466 (citation omitted).[18]

Between 1998 and 2003, plaintiff unsuccessfully applied for eight different supervisory positions. He is Caucasian and all of the successful candidates were African-Americans.

(1) In 1998, defendant posted an opening for a Probation Supervisor. This position was not filled in 1998. Plaintiff does not argue that defendant's failure to fill this position in 1998 was the result of racial discrimination.

(2) The Probation Supervisor position was re-posted in 1999, and the position was filled by somebody who had 10 more years of experience as a probation officer. Plaintiff now concedes that he cannot prove discrimination with regards to this promotion decision.

(3) The second Probation Supervisor position was filled by a person who had three more years of experience as a probation officer, two more years of experience working for the court, had the preferred bachelor's degree in psychology, social work, or a related field, and had been the interim probation supervisor for the preceding seven months. In addition, this person appeared for her interview with a portfolio of her accomplishments and an action plan for improvements in the probation department, while plaintiff brought nothing like this to his interview. In fact, when applying for this position, plaintiff submitted a two-page resume accompanied by a letter that merely stated, "I am qualified for this position because I have 25 years of court experience."[19]

(4) The Central Records Supervisor position was filled by a person who had worked as a clerk in the records department for four years and as a senior clerk in that

---

[18] Even assuming that plaintiff is entitled to a presumption of discrimination, the Court of Appeals, contrary to the test set forth in *Hazle,* failed to even consider whether defendant rebutted this presumption.

[19] Justice Kelly's concurrence: (a) relies on the fact that plaintiff had a bachelor's degree, but ignores the fact that the person who received the promotion had the preferred bachelor's degree in "psychology, social work, counseling, or a related field"; (b) relies on the fact that plaintiff had seven years of experience working as a probation officer, but ignores the fact that the person who received the promotion had 10 years of experience working as a probation officer; and (c) relies on the fact that plaintiff received higher scores in his interview, but ignores the fact that this higher score was received in 1999, three years before the 2002 promotion decision, and that, in 2002, the person who received the promotion earned an interview score that was almost twice as high as plaintiff's.

department for one year. Plaintiff had no experience in records. In addition, the person who was hired had made proposals for procedural changes in the records department that were later implemented by the records department, he had prepared for his interview by researching court records storage techniques used in other states and by drafting a mission statement for the records department, and he presented this information to the interview panel in what was viewed as a professional manner using a display board.[20]

(5) Plaintiff was not eligible for the Clerical Services Supervisor II position because he was not a member of the Government Administrators Association (GAA), as only supervisors are members of the GAA. Plaintiff had the opportunity to become a member of the GAA, but turned this down because it would have involved a pay reduction. Plaintiff admitted that other applicants, including African-Americans, who were not GAA members were not eligible for this promotion either.[21]

(6) Plaintiff was also not eligible for the Jury Services Supervisor position because he was not a member of the GAA. Plaintiff now concedes that he cannot prove discrimination with regard to the Jury Services Supervisor position.

(7) The first Court Services Supervisor II position was filled by somebody who had been the Assistant to the Chief Administrative Officer for the City of Detroit, had six

---

[20] The concurrence: (a) relies on the fact that plaintiff had worked with court records, but ignores the fact that the person who received the promotion worked as a clerk in the records department for four years and as a senior clerk in that department for one year and that plaintiff had never worked in the records department; and (b) relies on the fact that the person who received the promotion had received negative performance reviews, but ignores the fact that these negative reviews occurred several years before the pertinent promotion decision and that in the meantime this person had proposed changes in the records department that were subsequently implemented by the department and that he was especially well prepared for his interview.

[21] The concurrence: (a) states that the person who received this promotion did not have a bachelor's degree at the time of hiring, while failing to acknowledge that defendant's human resource generalist testified that the person who received the promotion *did* have a bachelor's degree; (b) fails to recognize that plaintiff's only evidence that the person who received the promotion did not have a bachelor's degree in 2002 was that in 2000 she indicated that she was in her second year in college, yet does not explain why this means that she did not have her bachelor's degree in 2002; and (c) fails to acknowledge that plaintiff admits that there is no question that this person currently has a bachelor's degree.

years of experience with defendant as the in-house counsel coordinator, and had two more years of experience working for defendant.[22]

(8) The second Court Services Supervisor II position was filled by somebody with over 20 years of management experience, a bachelor's degree, and excellent references. Plaintiff has no management experience.[23]

For the above reasons, I believe that defendant has presented a race-neutral rationale for each of its decisions. In response, plaintiff has failed to provide any evidence that these reasons were merely a pretext for discrimination.

Moreover, the Court of Appeals seriously erred in relying on plaintiff's supposed "statistical" evidence of racial discrimination. Plaintiff here has merely submitted evidence that most of defendant's supervisors are African-Americans, a not particularly surprising result in light of the racial composition of the overall 36th District Court work force and of the surrounding community served by that court. Most tellingly, plaintiff has submitted no evidence regarding how many non-African-Americans applied for any of these supervisory positions. Without knowing whether there were non-African-Americans who *applied* for a given position, the fact that an African-American *received* the position can hardly be viewed as evidence of discrimination. To view plaintiff's "statistical" evidence as relevant under these circumstances is to accept the premise that employment numbers ought to reflect certain racial proportions. I do not accept this premise in minority discrimination lawsuits, and I do not accept this in "reverse discrimination" lawsuits. Absent direct or circumstantial evidence, it is simply impossible to determine whether an employer has engaged in unlawful discrimination against either African-Americans or non-African-Americans without at least knowing how many African-Americans and how many non-African-Americans applied for a particular position. One simply cannot infer racial discrimination from the mere fact that a disproportionate number of defendant's supervisors are of one race or another.[24]

---

[22] The concurrence states that the person who received the position was "unqualified," but completely ignores the above-described qualifications of this person.

[23] The concurrence relies on the fact that the person who received the position had no experience in courtroom operations and no seniority with the court, but ignores the fact that while plaintiff had *no* management experience of any kind, the person who received the position had over 20 years of management experience.

[24] That defendant did not affirmatively object to the admission of this "statistical" evidence is not particularly relevant because the issue here is not whether the evidence was admissible; rather, it is whether the *Court of Appeals* erred in relying on this evidence to justify its affirmance of the trial court's denial of defendant's JNOV motion.

The concurrence states that this issue is "tangential to the dispositive subject of this appeal—whether plaintiff set forth a prima facie case of discrimination." *Ante* at 6 n 15. However, contrary to her contention, the issue here is not merely whether plaintiff set forth a prima facie case of discrimination. Although the concurrence admits that defendant presented a race-neutral rationale for each of its decisions, it fails to recognize the legal significance of this assertion. That is, she fails to recognize that once the defendant presents nondiscriminatory reasons for its decisions, "the presumption of discrimination created by plaintiff's prima facie case dropped away, and the burden of production returned to plaintiff to show the existence of evidence 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" *Hazle, supra* at 473 (citation omitted). The Court of Appeals concluded that plaintiff satisfied this burden because plaintiff presented evidence that he was more qualified than some of the individuals who were hired to fill the positions that he sought and because plaintiff presented "statistical" evidence to support his claim of discrimination. As discussed earlier, I do not believe that plaintiff presented evidence that he was more qualified than the individuals who secured the positions for which plaintiff applied. Therefore, whether the Court of Appeals erred in relying on plaintiff's "statistical" evidence is not "tangential to the dispositive subject of this appeal." Rather, it is central.

Because plaintiff has presented no evidence of racial discrimination, or even any evidence that one could use to infer that plaintiff was the victim of racial discrimination, I would reverse.

_____

The concurrence states that "even if the statistical evidence were insufficient standing alone, plaintiff introduced sufficient other evidence of discrimination." *Ante* at 7 n 15. This "other evidence" is apparently the testimony of Nancy Cook, a former coworker. However, Cook admittedly played no role in any promotion decision and her beliefs about defendant's exercises in racial discrimination were based on nothing other than her own speculations. Moreover, Cook did not work for defendant during *any* of the promotion decisions that are at issue here. Although she worked for defendant at the time of the first probation supervisor promotion decision, plaintiff now concedes that he is not able to establish a prima facie case of discrimination with regard to this promotion decision. For these reasons, Cook's testimony is wholly irrelevant.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 19, 2008

*Corbin R. Davis*

Clerk

d1216