*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS PAVLAK and KATHLEEN PAVLAK,

Plaintiffs-Appellants,

v

JAMES BECHTEL and LEANA A. LEE,

Defendants-Appellees.

UNPUBLISHED
October 08, 2024
9:45 AM

No. 364862
Oakland Circuit Court
LC No. 2019-173661-CK

NICHOLAS PAVLAK and KATHLEEN PAVLAK,

Plaintiffs-Appellees,

v

JAMES BECHTEL and LEANA A. LEE,

Defendants-Appellants.

No. 365609
Oakland Circuit Court
LC No. 2019-173661-CK

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

These consolidated appeals[1] arise from the same trial court proceeding. In Docket No. 364862, plaintiffs Nicholas and Kathleen Pavlak appeal by right the judgment of the trial court entered after a jury trial. In Docket No. 365609, defendants James Bechtel and Leana A. Lee appeal by right the trial court's post-judgment order denying their motion for case evaluation sanctions. We affirm in both appeals.

---

[1] See *Pavlak v Bechtel*, unpublished order of the Court of Appeals, entered April 11, 2023 (Docket Nos. 364862, 365609).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts underlying both appeals are largely undisputed. In 2018, the Pavlaks purchased a single-family residence at 693 West Hazelhurst in Ferndale (the house). The house was owned by Bechtel and Lee, who were divorced; Lee had no involvement in the transaction other than signing documents that had been prepared by Bechtel. During the process of buying the house, the Pavlaks were provided with a seller's disclosure statement (SDS) completed by Bechtel. The SDS indicated that the seller lived in the house from November 2005 until July 2011, and contained questions about the property and handwritten answers by Bechtel. The following portions of the SDS are relevant to the issues on appeal:[2]

**Property conditions, improvements & additional information**

1.      Basement/Crawlspace: Has there been evidence of water?   yes _X_   no___

If yes, please explain: *as long as gutters are clean and downspouts are clear, rain stays out*

\* \* \*

10.      Environmental problems:  Are you aware of any substances or products that may be an environmental hazard such as, but not limited to, asbestos, radon gas, formaldehyde, lead-based paint, fuel or chemical storage tanks and contaminated soil on property. [sic]

Unknown_____                    yes_____                    no __X__

\* \* \*

**Other Items: Are you aware of any of the following:**

\* \* \*

5.      Settling,   flooding,   drainage,   structural,   or   grading   problems?
unknown_____          yes _X_          no_____

6.      Major damage to the property from fire, wind, floods, or landslides?

unknown_____          yes_____          no __X__

\* \* \*

---

[2] Bechtel's handwritten notations are rendered in italics in this opinion.

If the answer to any of these questions is yes, please explain. Attach additional sheets, if necessary: *Replaced main drain 2008,*[sic]   [Seller's Disclosure, pp 1-2.]

After receiving the SDS, the Pavlaks decided to have the home inspected. The inspection was performed in March 2018 and an inspection report was prepared for the Pavlaks. Relevant to the issues on appeal, the inspector noted that due to the house's age, asbestos could be present in the building materials; additionally, the inspector noted "[e]vidence of a prior water event" in the basement, which implicated a "[p]ossible mold concern." The inspector also noted that the exterior drainage system of the house needed improvement and that storm water had entered into the basement in the past; the inspector recommended that the Pavlaks "inspect and verify proper operation of sewer line from house to main" in order to prevent "continued water entry into basement." The inspection report recommended that these issues receive further evaluation, but indicated that the time periods for such evaluations were "discretionary" rather than "immediate."

The Pavlaks elected to have the house's sewer drain and line inspected. Nicholas testified that the sewer inspection had revealed that the entire main drain had not been replaced; part of the drain had been replaced, but part had not been. Further, there was some root intrusion into the drain, and although "it had looked fairly clear" at the time of the inspection, "the reports said it might be something to look at in the future."

The Pavlaks prepared a list of issues with the house based on the results of the inspections, and their real estate agent emailed that list to Bechtel and Lee's real estate agent, stating that "there were some items that came up in inspection that [the Pavlaks] feel are beyond the scope of what they should be expected to do and are asking the Sellers for Concessions at closing so they will have the funds to complete said repairs." The email then listed various issues such as improper wiring in the garage and an inoperable ceiling fan; the email also stated that "[u]pon inspection of the sewer line from the house to the street we discovered a sizeable root ball intrusion at the cast-iron to PVC connection." The email also requested further information concerning previous water intrusion in the basement:

> 6. Basement, pages 15 and 16 of 115. There is evidence of previous water intrusion in the basement which could indicate possible contamination which the Buyers will need to look into after closing. Do the Sellers have any information that they could furnish us on this?

The email closed with the following statement: "As a result of these immediate repairs that the Buyers will need to perform they are asking for Seller's Concessions of $5,000.00 to be credited toward prepaids, closing costs and insurance."

Bechtel testified that he received the Pavlaks' questions from his real estate agent, and responded to them via email. Regarding the statement about the root ball found in the sewer line, Bechtel stated: "Roots in the sewer line can be cleared with a plumber coming out for ~$175 [sic] (we have had them out before to clear the line)." Regarding the statement and question about previous water intrusion in the basement, Bechtel stated: "Rain water has entered the basement due to overfilled gutters or downspouts not being attached at the bend (typically in north west corner or north east corner). This was on the disclosure sheet. This was remedied by having

gutters cleaned and/or downspouts re-attached. Additionally dirt was added at the base of the house to help with runnoff. [sic]." Bechtel instructed his agent to counteroffer the Pavlaks $3,000 in seller's concessions. According to Bechtel, while he did not specifically instruct his real estate agent to provide his answers to the Pavlaks, Bechtel "just assumed he would."

The Pavlaks testified that they never received an answer to their question about previous water intrusion in the basement. However, they did receive the $3,000 counteroffer, which they accepted. The Pavlaks closed on the transaction and moved into the house in May 2018.

Nicholas testified that after moving into the house, he developed "really bad" allergies that required him to take over-the-counter allergy medicine. He also testified that the family dog began to scratch and lick himself constantly, eventually developing "hot spots" requiring veterinary treatment.

Approximately two and a half months after the Pavlaks moved into the house, the basement flooded with both water and raw sewage. Nicholas testified that the flooding covered about 80 percent of the basement area. The Pavlaks engaged ServPro, a cleaning and restoration company, to deal with the flood damage. Nicholas testified that when ServPro employees removed part of the baseboard from a basement wall, they found that it was "almost entirely black with mold." Mold was discovered on all of the outer walls of the basement. ServPro was not able to complete the cleaning and restoration until the mold was inspected and tested. ServPro referred the Pavlaks to TriCor, an environmental testing and home and commercial inspection company, to inspect and test for mold. The TriCor inspector testified that he found mold behind dry walls, indicating that the mold had been present before the most recent flood. The inspector also found areas where water damage appeared to have been covered with paint. The mold in the basement was identified as being composed of several highly allergenic species of "black molds." The TriCor inspector determined that the mold would need to be remediated and instructed ServPro on the necessary process to perform the remediation. The inspector opined at trial that the mold had likely been present for several years.

After TriCor's inspection, testing, and instruction, ServPro began the remediation process in the basement; however, when ServPro employees began to remove the carpet in the basement, they discovered tiles that could potentially contain asbestos. A sample of the tile indeed tested positive for asbestos, requiring that the remediation be halted until the asbestos risk could be abated. A subcontractor was hired to perform the asbestos abatement, after which the mold remediation process was completed. The Pavlaks testified that the entire process took several weeks, during which time they were unable to use their basement, including the laundry room, as well as portions of the main floor that had been sealed off to allow workers to come in and out without contaminating the rest of the house. The Pavlaks testified that they had to take several days off from work as a result of the abatement and remediation process.

The Pavlaks filed suit against Bechtel and Lee in 2019, alleging silent fraud, fraudulent misrepresentation, negligent misrepresentation, and violation of the seller's disclosure act (SDA), MCL 565.960. The trial was adjourned several times due to the COVID-19 pandemic. The parties underwent case evaluation in July 2020. The case evaluators issued an award of $12,750.00 in favor of the Pavlaks, which was accepted by Bechtel in August 2020. The Pavlaks never filed an acceptance or rejection of the award, causing the award to be automatically rejected 28 days after

they received service of the award. See MCR 2.403(L)(1). In September 2022, the Pavlaks moved the trial court to add an expert witness on damages. The Pavlaks stated in their motion that they had sold the house in June 2022, and that their proposed expert was prepared to testify that the sale price was approximately $20,000 less than the house's appraised value, or the value of comparable sales made around the same time. The trial court denied the motion at a motion hearing on September 14, 2022.

The four-day jury trial on the Pavlaks' complaint began on September 22, 2022 and concluded on September 29, 2022. At trial, Bechtel testified that basement of the house had in fact flooded several times. The basement flooded in 2007 as a result of a burst pipe. The basement carpet was replaced following the flood; however, Bechtel denied knowing that the tiles under the carpet contained asbestos. The basement had also flooded in 2011 as a result of water intrusion from outside. A sewage drain in the basement had clogged and caused sewage backup and flooding in February 2014. The basement flooded again in either late 2014 or 2015; Bechtel testified that either he or his brother had removed the carpet, exposing the tile underneath. There was another sewage backup in 2017. Bechtel testified that he had painted the basement drywall prior to putting the house up for sale, but denied painting to cover up evidence of mold or water damage. Bechtel admitted that two tenants had raised concerns that there was mold in the basement as a result of flooding, which led to his removal of the carpet in late 2014 or 2015. Bechtel admitted that his answers to questions on the SDS did not specifically disclose any of these earlier floods, but opined that his answers had disclosed that flooding could happen from water intrusion. Bechtel also admitted that he did not further elaborate about specific flooding instances when he responded to his real estate agent's email with the Pavlaks' questions.

Nicholas testified that he was offered a job in Atlanta in 2022, requiring the Pavlaks to sell the house and move. Nicholas stated that the house had to be sold "quickly, you know, to move for a job." To prepare the house for sale, Nicholas and his father refinished the basement. The Pavlaks were required to disclose the history of flooding, mold, and asbestos remediation when completing their own seller's disclosure form. Nicholas testified that the house was listed for sale at $350,000, which the Pavlaks believed was "under value for the market based on comps that appeared around the area." Nicholas testified that they believed the low price would cause the house to sell quickly, but that it actually took over a month to get an offer on the house. The Pavlaks accepted an offer for $340,000.

Nicholas testified regarding two similar, but smaller, properties on the same block that sold around the same time. The Pavlaks introduced evidence that these homes sold for $375,000 and $382,000. When the Pavlaks' counsel asked Nicholas what he believed the value of the house would have been "had it not been for the history of the basement," Bechtel's counsel objected on the grounds that there was no evidence that Nicholas was trained in real estate appraisal. Nicholas testified that there had been homes in the neighborhood that had sold for less than $340,000, but stated that he believed they were "not very comparable." Nicholas testified that they were seeking $35,000 in damages from Bechtel for "the loss of value on the sale of the home."

Kathleen testified that she and Nicholas were "motivated to get a lot of interest in the house" when they listed it for sale, and that they discussed the price and decided to list it for $350,000. She testified that they had a limited time to sell the house and relocate to Atlanta for

-5-

Nicholas to start his new job. She agreed on cross-examination that the house had been listed at an "intentionally low" price.

The Pavlaks both testified that they had reviewed the home inspection report and sewer inspection report, including the recommendations for further inspections. The parties stipulated to having Lee's deposition testimony read to the jury. The Pavlaks' counsel told the jury that the Pavlaks were not seeking any damages against Lee.

The jury delivered a verdict for the Pavlaks as described. Generally speaking with regard to the various fraud claims, the jury found that Bechtel had knowledge of the previous floods and sewage backups at the house, as well as "the mold and/or asbestos that existed in the basement" of the house when he completed the seller's disclosure, and that he had a duty to disclose these conditions when he filled out the form, but did not do so; however, the jury also found that the Pavlaks' reliance on Bechtel's omissions or misrepresentations did not cause their damages, and awarded no damages for those claims. Regarding the violation of the SDA claim, the jury found that Bechtel had failed to disclose information required by the act and that the Pavlaks had relied on the information in the SDS; the jury awarded the Pavlaks $7,000 for this claim.

After the judgment on the verdict was entered, the Pavlaks moved the trial court for judgment notwithstanding the verdict (JNOV), a new trial, or additur, arguing that the trial court had abused its discretion by denying the Pavlaks' motion to add an expert witness and by sustaining an objection to plaintiffs' testimony, that the jury verdict was inconsistent, and that additur was appropriate because the jury had not followed its instructions in awarding damages. The trial court denied the motion. Bechtel subsequently filed a motion for case evaluation sanctions. Bechtel argued that although MCR 2.403 had been amended before the jury trial, the case evaluation process had been conducted under the previous version of the court rule, and that version should apply to his request for sanctions. The trial court denied that motion.

These appeals followed.

## II. DOCKET NO. 364862

### A. VALUATION EVIDENCE

The Pavlaks argue that the trial court erred by denying their motion to add an expert witness to testify regarding the value of the house when it was sold, and by refusing to allow the Pavlaks themselves to testify as to what they believed the sale price of the house would have been had it not been for the history of mold, asbestos, and flooding. We disagree in both respects.

We review for an abuse of discretion a trial court's decision to deny a motion to amend a witness list to add an expert witness. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1992). The trial court should determine whether the party seeking amendment has demonstrated good cause for the amendment or whether the opposing party will be prejudiced by the amendment. *Id.* at 20-21. We also review for an abuse of discretion a trial court's decision to admit or deny evidence. See *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id.* Even if the trial court commits an evidentiary error, reversal is only required if the error was prejudicial, viewed in light of the weight of the other properly-admitted evidence. *Craig v Oakwood Hosp*, 471 Mich

67, 76; 684 NW2d 296 (2004); see also *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 103; 776 NW2d 114 (2009).

## 1. MOTION TO AMEND WITNESS LIST

Regarding the Pavlaks' motion to amend their witness list, the trial court denied the motion on the grounds that it was untimely. We find no abuse of discretion in this denial.

The purpose of witness lists is to avoid "trial by surprise." *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993) (citation omitted). To that end, MCR 2.401(I)(1) authorizes the trial court to enter a scheduling order providing a deadline for the filing and serving of witness lists. MCR 2.401(I)(2) further provides that the trial court "may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown." It was therefore the Pavlaks' burden to demonstrate good cause for the late addition of a new expert witness. *Cox v Hartman*, 322 Mich App 292, 315; 911 NW2d 219 (2017).

In this case, the Pavlaks filed their motion to amend their witness list on September 7, 2022, two weeks before trial, in a case that had been pending for over three years. The hearing on the motion was set a mere one week before trial. Although the Pavlaks' motion was based on the sale of their home, the Pavlaks waited more than two months *after* the sale of their home was complete to file their motion to add an expert witness to testify to the alleged loss of value from the sale as the result of Bechtel's actions. Moreover, while the Pavlaks had not sold the house when they filed their complaint, they never amended or sought to amend the complaint following the sale, and Bechtel had no notice that they intended to seek damages from that alleged loss of value. Bechtel therefore would have been prejudiced by having to seek to counter or cross-examine an expert witness testifying regarding an entirely new category of damages on very short notice, or else be required to seek adjournment of an already extremely elderly case. See *Cox*, 322 Mich at 316. Under these circumstances, the trial court's exercise of its discretion not to allow the late amendment of the Pavlaks' witness list was within the range of principled outcomes. See *Edry*, 486 Mich at 639.

## 2. THE PAVLAKS' TESTIMONY

The trial court sustained Bechtel's counsel's objection to Nicholas testifying to his opinion of what the house's value would have been "had it not been for the history of the basement," which presumably meant the value of the house if it had not had mold damage, flooding, or asbestos tile. The trial court sustained the objection on the grounds that such testimony would be speculation. We find no abuse of discretion in the trial court's decision.

Neither of the Pavlaks were qualified as experts in the area of home valuation or a related field. Therefore, their testimony regarding the value of the house if it had not suffered from repeated floods, mold, or asbestos tile would have been lay witness testimony. Lay witnesses must testify from personal knowledge, MRE 602, but may offer opinions and inferences based on their knowledge in certain circumstances. See *City of Grand Rapids v HR Terryberry Co*, 122 Mich App 750, 753; 333 NW2d 123 (1983). The admissibility of lay witness opinion testimony is governed by MRE 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinions is limited to one that is:
>
> (a) rationally based on the witness's perception; and
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue.

This Court has permitted lay witnesses to testify regarding their opinion of their own property's value, provided that the opinion was based on personal knowledge. See, e.g., *Lee v Lee*, 191 Mich App 73, 75-76; 477 NW2d 429 (1991); *Michigan Mut Ins Co v CNA Ins Cos*, 181 Mich App 376, 385; 448 NW2d 854 (1989); see also *HR Terryberry Co*, 122 Mich App at 753 ("A lay witness will be permitted to testify as to the value of land if he has seen the land and has some knowledge of the value of other lands in the immediate vicinity."). But the Pavlaks sought to testify about much more than the mere value of the house as it stood; they sought to testify to what the value of the home *would have been* if it had a different history and if Bechtel had taken different actions to remedy water intrusion, sewage backup, and asbestos issues. Such testimony would not have been rationally related to their perception of the market value of their home and the market value of other homes in the neighborhood. Rather, such hypothetical or speculative opinion testimony as to the effect of various conditions (or their absence) on a home's value requires knowledge in an area that belongs more to an expert than to the common man. See MRE 702; *Surman v Surman*, 277 Mich App 287, 308; 745 NW2d 802 (2007); see also *MDOT v VanElslander*, 460 Mich 127, 131-132; 594 NW2d 841 (1999) (permitting an expert appraiser to speculate whether a zoning variance would be granted and, if so, what the effect on the subject property's value would be). Accordingly, the trial court's decision not to permit such testimony was within the range of principled outcomes. See *Edry*, 486 Mich at 639.

### 3. REVERSAL NOT REQUIRED EVEN IF ERROR OCCURRED

As stated, we hold that the trial court did not abuse its discretion either in denying the Pavlaks' motion to amend their witness list or in sustaining Bechtel's objection to their lay witness opinion testimony. Additionally, we note that even if the trial court *had* abused its discretion regarding either (or both) of these claims of error, reversal would still not be required. The Pavlaks were in fact permitted to testify regarding the price at which the house sold as well as the sale prices of two neighboring "comparables" that were sold contemporaneously. Documentary evidence of the neighboring homes' sale prices, square footage, and features was admitted into evidence. They were also permitted to provide the jury with their estimate of the loss of value on the sale of the house because of Bechtel's conduct. In short, although their claim was not bolstered by an expert, they were able to present it to the jury in some detail. Bechtel did not mount a particularly vigorous defense to this claim, and did not present his own lay or expert witnesses to testify regarding the house's value. These facts alone render it doubtful that the lack of additional speculation from the Pavlaks, or testimony from an expert, would have been outcome-determinative.

Moreover, and more importantly, the Pavlaks testified that they *chose* to list the house at $350,000, rather than seek a higher price, in the hope of selling the home quickly so that they could move to Atlanta for Nicholas's new job. Nicholas further testified that they took the first offer that

they received rather than keep the house on the market longer. In other words, although the Pavlaks claimed that they could have sold their house for $35,000 more than they did, their own testimony shows that they never even tried to get that price for it—and further that they were under significant time pressure that influenced both their pricing decisions and their ability to wait for better offers to come along. Additional speculation from the Pavlaks, or testimony from an expert, would not have changed these facts. The jury could easily have concluded that the Pavlaks set a price designed to sell the house quickly and received nearly that price for the home, and that Bechtel bore no responsibility for the price they eventually received.

In light of the other properly admitted and unchallenged evidence, even if the trial court did commit the evidentiary errors claimed by the Pavlaks, reversal would not have been required. *Craig*, 471 Mich at 76; *Ykimoff*, 285 Mich App at 103.

## B. JURY VERDICT

The Pavlaks also argue that the trial court erred by denying their motion for JNOV or a new trial, or additur, because the jury verdict was inconsistent. We disagree. We review de novo a trial court's ruling on a motion for JNOV. *Attard v Citizens Ins Co of Am*, 237 Mich App 311, 321; 602 NW2d 633 (1999). We review for an abuse of discretion a trial court's decision on a motion for a new trial or additur. *Taylor v Kent Radiology*, 286 Mich App 490, 523; 780 NW2d 900 (2009).

Motions for JNOV are "essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case." *Id.* at 499. Accordingly, we review the evidence and all legitimate inferences to be drawn from that evidence in the light most favorable to the nonmoving party. *Id.* (citation omitted). A motion for JNOV should only be granted if the evidence, viewed in that light, fails to establish a claim as a matter of law. *Id.* A new trial should only be granted if, after reviewing all of the evidence and giving due deference to the judgment of the jury, we determine that the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow it to stand. *Sciotti v 36th Dist Court*, 482 Mich 1143, 1147; 758 NW2d 289 (2008); *Ellsworth v Hotel Corp of Am*, 236 Mich App 185, 194; 600 NW2d 129 (1999).

A jury verdict, even if arguably inconsistent, should not be overturned or set aside "[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury." *Granger v Fruehauf Corp*, 429 Mich 1, 7, 9; 412 NW2d 199 (1987). In other words, we will not set aside a jury verdict if there is competent evidence to support it. *Allard*, 271 Mich App at 406-407. "[E]very attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside." *Id.* at 407 (quotation marks and citation omitted; alteration in original).

The Pavlaks argue that the jury verdict was inconsistent because the jury found that the Pavlaks had not relied on Bechtel's misrepresentations or omissions on the seller's disclosure form regarding their fraud claims, but did find that the Pavlaks had relied on those misrepresentations or omissions in finding Bechtel liable for violation of the SDA and awarding damages. We disagree. The jury was instructed that the elements of the Pavlaks' fraud and misrepresentation claims needed to be proven by clear and convincing evidence, see *Hi-Way Motor Co v International Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976), while the elements of the

Pavlaks' claim for statutory violation needed to be proven only by a preponderance of the evidence, see *Residential Ratepayer Consortium v PSC*, 198 Mich App 144, 149; 497 NW2d 558 (1993). The Pavlaks do not argue that these instructions were incorrect. There is nothing logically inconsistent about a jury finding that a party had proven an element of a claim by a preponderance of the evidence, but had not proven a similar element of another claim by a much higher evidentiary standard. *Granger*, 429 Mich at 7, 9; *Allard*, 271 Mich App at 407.

Additionally, the jury's verdict did not preponderate so heavily against the evidence that it would be a miscarriage of justice to allow it to stand. *Sciotti*, 482 Mich at 1147. The jury found that Bechtel had violated the SDA, but did not find that Bechtel's actions had risen to the level of actionable fraud. Specifically, the jury found that the Pavlaks had not established by clear and convincing evidence that they had reasonably relied upon Bechtel's statements concerning mold, water intrusion, and asbestos to their detriment. As discussed, the Pavlaks testified to having home and sewer inspections done, and receiving recommendations for further evaluation of potential mold and water intrusion issues, which they did not pursue. The jury could have concluded that the Pavlaks had not established (or at least, not established by clear and convincing evidence) that any reliance on Bechtel's statements was reasonable. See *Bergen v Baker*, 264 Mich App 376, 389; 691 NW2d 770 (2004) (noting that a party's reliance on a misrepresentation in fraud actions must be reasonable). On this record, we see no reason to set aside the jury verdict, either through JNOV or a grant of a new trial.

In the alternative, the Pavlaks argue that additur is an appropriate remedy, because the jury failed to award the Pavlaks all of their requested damages (apart from the damages for loss of value to the house on the sale) despite what they characterize as Bechtel's failure to challenge the amounts of any of the damages claimed. We disagree. When reviewing a claim for additur, the appropriate inquiry is whether the evidence supports the jury's award. *Robertson v Blue Water Oil Co*, 268 Mich App 588, 595; 708 NW2d 749 (2005).

The Pavlaks argue that Bechtel did not challenge the amount of damages claimed; therefore, they argue, the jury should have awarded them all of their requested damages, apart from the damages claimed for the loss of value for the sale of the house. While it is true that Bechtel did not dispute the amounts that the Pavlaks were charged for ServPro or other remediation companies' services, or the value the Pavlaks placed on their days of work lost, this fact does not render the jury's verdict inconsistent or unsupported by evidence. The jury was asked to determine Bechtel's liability as well as the amount of damages that could be attributed to Bechtel's conduct. The jury was not required to award 100% of the damages claimed by the Pavlaks simply because it found Bechtel liable for one of several claims. For example, the jury could have determined that Bechtel's conduct rendered him liable for the mold remediation damages, but not damages from the asbestos remediation—the evidence shows, after all, that Bechtel indicated on the SDS that he was unaware of any asbestos, not that he affirmatively stated that there was no asbestos on the property. And the jury form merely asked the jury to find whether Bechtel had "knowledge of the mold and/or asbestos" that existed in the basement of the house. The jury could also have determined that the Pavlaks bore responsibility for some of the damages they incurred based on the evidence that they were advised by a home inspector to perform additional inspections that were not done. We need not speculate further—the point is that the jury's award was rationally

supported by the evidence, and additur is therefore not appropriate. *Robertson*, 268 Mich App at 596.[3]

### III. DOCKET NO. 365609

In Docket No. 365609, Bechtel argues that the trial court erred by denying his motion for case evaluation sanctions. We disagree. "A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "This Court reviews de novo a trial court's decision on . . . questions of . . . the construction and application of court rules." *Citizens for Higgins Lake Legal Levels v Roscommon County Bd of Comm'rs*, 341 Mich App 161, 176; 988 NW2d 841 (2022). "[H]owever, a trial court's decision whether to apply the 'interest of justice' exception" when addressing a court rule amended during litigation, "is reviewed for an abuse of discretion." *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, 345 Mich App 649, 660; 9 NW3d 104 (2023). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

MCR 2.403 governs the case evaluation procedure. Prior to its amendment in 2022, MCR 2.403(O) provided in relevant part:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation. [MCR 2.403(O)(1), prior to amendment effective January 1, 2022.]

The amendments to MCR 2.403 became effective on January 1, 2022. Relevant to this appeal, subsection (O) was removed in its entirety, and the rule no longer provides for case evaluation sanctions based on the results of a subsequent jury verdict.

It is undisputed that this case commenced under the previous version of MCR 2.403, that case evaluation was conducted under that rule in 2020, and that the rule was amended nearly ten

---

[3] In their appellate brief, the Pavlaks state that they "postulate" that the TriCor inspector's inadvertent mention of insurance during his testimony may have somehow affected the jury's award. The Pavlaks do not elaborate on this statement or support it with legal authority or even citation to the record, and it is unclear whether they intended to make an actual argument regarding the inspector's testimony. In any event, the mention of insurance was inadvertent and isolated; the inspector merely stated that ServPro asked him to "write a small protocol for the insurance company" regarding mold remediation. The jury was instructed not to consider or speculate whether any party was insured, and that whether a party was insured had no bearing on any of the issues under the jury's consideration. There is no reason apparent from this record to conclude that the jury did not follow its instructions, see *Lenawee Co v Wagley*, 301 Mich App 134, 159; 836 NW2d 193 (2013), or that the trial court's limiting instruction was not sufficient to abrogate any potential prejudice, *Tobin v Providence Hosp*, 244 Mich App 626, 641; 624 NW2d 548 (2001).

months before the jury trial and verdict in this case. Generally, when a court rule is amended during ongoing litigation, the new rule should be applied to pending actions "unless there is a reason to continue applying the old rules." *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 337; 602 NW2d 556 (1999), quoting *Davis v O'Brien*, 152 Mich App 495, 500; 393 NW2d 914 (1986). This reason must be more than the mere fact that a different result would be reached under the new rule than the old; rather, a court should apply the old rule only if applying the new rule would "work injustice" on a party. *Id.*, see also MCR 1.102. "[A] new court rule would 'work injustice' where a party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rule." *Id.* (citations omitted). But, because a party's compliance with the old rule could nearly always be said to have resulted in "reliance" on that rule, we must not construe this exception so broadly that it consumes the general rule. *Id.* at 339.

In this case, at the time Bechtel participated in case-evaluation proceedings and accepted the award, he did not know whether he would be entitled to seek sanctions under the preamendment version of MCR 2.403. The Pavlaks could have also accepted the award, which would have disqualified any potential sanctions and closed the case; alternatively, the Pavlaks could have been awarded more damages at trial. Bechtel did know whether he could have sought case-evaluation sanctions (under the prior rule) until nearly ten months after the rule was amended. Although Bechtel argues that his "reliance" on the availability of case evaluation sanctions influenced his decision to go to trial, he has not demonstrated that the availability of case evaluation sanctions was such a motivating factor that it would work an injustice upon him not to apply the prior rule, especially when he had ample time after MCR 2.403's amendment and before trial to consider the effect of the new rule on his chances of receiving such sanctions. Under these circumstances, we find no injustice in applying the amended version of the court rule. *Reitmeyer*, 237 Mich App at 337. Accordingly, the trial court did not abuse its discretion by denying Bechtel's motion. *Centria Home Rehab, LLC*, 345 Mich App at 660.

IV. CONCLUSION

We affirm in both appeals.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood